IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Bilal A. Al-Haqq, #126806, <br> a/k/a Bilal Abdullah Al-Haqq, <br> a/k/a Michael Dion McFadden, <br> <br> Plaintiff, <br> <br> vs. <br> William R. Byars, Jr., Director; <br> Warden John Pate; <br> Major Walter Worrick; <br> Lt. Jennings, SMU; <br> Sgt. A. DeLoach; <br> Corporal Bryant, SMU; <br> Ofc. Ford; <br> Ofc. Frasier; <br> Dr. Thomas E. Byrne; <br> Nurse Alecia Jones-Thompson, <br> in their official and individual capacity, <br> <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | C/A No. 2:13-2043-JFA-WWD <br> <br> REPORT AND RECOMMENDATION |

This civil rights action, brought pursuant to 42 U.S.C. § 1983[1], filed by a state prisoner proceeding <u>pro se</u> and <u>in forma pauperis</u> is before the undersigned United States Magistrate Judge for a report and recommendation on the Defendants' motion for summary judgment pursuant to FED. R. CIV. P. 56. 28 U.S.C. § 636 (b) and Local Civil Rule 73 .02, DSC.

---

[1] Section 1983, titled a civil action for deprivation of rights reads in relevant portion: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.
42 U.S.C. §1983

1

The plaintiff, Bilal A. Al-Haqq ("Al-Haqq") filed his complaint on July 25, 2013, and named as Defendants William R. Byars, Jr., the Director of the South Carolina Department of Corrections (SCDC); Warden John Pate of the Allendale Correctional Institution (ACI) where Al-Haqq was housed at all times relevant to his complaint; and Lt. Jenkins, a correctional officer at ACI in the Special Management Unit (SMU) where Al-Haqq was housed. He also sued the following employees of SCDC at ACI: Major Walter Worrick; Sgt. A. DeLoach; Corporal Bryant; Off. Ford; Off. Frasier; Dr. Thomas E. Byrne, and Nurse Alicia Jones-Thompson. He sued all Defendants in their official and individual capacities. He seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

In his complaint, he alleged the Defendants subjected him to excessive use of force and deliberate indifference to serious medical needs in violation of his protections under the Eighth Amendment, and in retaliation for his complaints.

Specifically, Al-Haqq complains of severe pain in his left shoulder and alleges he reported the issue to Defendant Byrne and another nurse in February and July, 2013. According to the Complaint, Plaintiff can not raise his arm above his head, and cannot hold objects in his left hand. Plaintiff alleges his existing injuries were exacerbated when Defendant Bryant pushed Plaintiff's face into a wall, punched him in the back and kicked him in his left thigh. He alleges that he continues to come into contact with Defendant Bryant.

Al-Haqq complains that the steroid treatment he had been receiving for his shoulder was not completed, and he alleges that the pain continues despite the medication he is receiving. Al-Haqq also claims he is asthmatic, and requires an inhaler.

2

He states that he is not permitted to keep the inhaler with him, and that he has had several asthma attacks. The inhaler is locked in the control room per prison rules and Plaintiff has been instructed that he must call for it. However, when he is having an attack is unable to do so.

Next, Al-Haqq alleges that Defendant Bryant threw Plaintiff's incoming mail into the trash can. He states that Defendant Bryant served him a dirty food tray that had been sitting on the floor. When he said he did not feel safe being served by Defendant Bryant, he was denied his food tray. Although Al-Haqq is no longer supposed to receive his food tray from Defendant Bryant, he claims that he has been told that Defendant Bryant can continue to make "call checks" at his cell. Al-Haqq maintains that he faced daily threats from Defendant Bryant, and that Bryant tried to continue bringing his food to his cell. Al-Haqq claims that Defendant Bryant again refused to give him food.

Al-Haqq complained that Defendant Bryant returned to his cell and sprayed mace into the cell through the food flap. He states he and his cell mate were left in the cell all weekend without a shower. He also alleges he could not breathe during the incident and was initially denied his inhaler. While he finally received his inhaler, he alleged he was unable to use it. Furthermore, the air was turned off and they were not given anything to eat. He alleges his eyes are "closed and watery with orange matter coming out." He states he cannot see out of his right eye, the vision in his left eye is blurry, and he can not open his eyes without pain. According to Al-Haqq, his complaints concerning Defendant Bryant have now been sent to the Division of Investigations (DOI).

Al-Haqq also believes that he is being retaliated against for filing numerous

3

grievances and lawsuits;[2] he has not been allowed to call his attorneys, has had his legal mail returned to him, sometimes opened and damaged, and has been denied legal supplies. He alleged he has been denied access to the courts.

Importantly, he also avers that he attempted to grieve these matters a number of times without success.

On December 27, 2013, the Defendants filed their summary judgment motion (Dkt. 70) and asserted as their first ground Al-Haqq's failure to comply with the exhaustion requirement of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e (a). Defendants filed their own affidavits as well as incident reports, medical records, and various Step 1 grievances submitted by the Plaintiff.

On December 27, 2013, Al-Haqq was provided a copy of the motion, affidavits, and exhibits and was given an explanation of dismissal and summary judgment procedures similar to that required by Roseboro v. Garrison, 528 F. 2d 309, 310 (4th Cir. 1975) advising him that a failure to properly respond might result in the entry of summary judgment against him.

On January 31, 2014, Plaintiff filed a response in opposition to the motion and a brief in support which ran fifty-seven (57) pages in length. Thereafter, on June 5, 2014, this case was reassigned to the undersigned. Since Al-Haqq's response to the summary judgment motion exceeded the page limits set out in this court's local civil rules, Local Civil Rule 7.05(B)(1), D.S.C. (limiting briefs to thirty-five (35) double-spaced pages)), the

---

[2] Although in his verified complaint Al-Haqq indicated that he had never begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise related to his imprisonment, a review of this court's records reveals that that is clearly untrue. See, 8:05-3215, and 8:01-0849.

pleading was stricken on July 7, 2014. Plaintiff was given until July 18, 2014, to file an opposition which complied with the page limit of the court's local rules. No timely opposition was filed. On July 28, 2014, however, Plaintiff filed a "motion for an exception" asking the court to consider the first thirty-five (35) pages of his stricken opposition as his brief which complies with the page limits of the local rules. That motion was granted on July 29, 2014.

On July 17, 2014, the undersigned ordered the Defendants to supplement their motion for summary judgment on the ground of failure to comply with the exhaustion requirement of the PLRA with proper support by July 22, 2014. Defendants filed the affidavit of Ann Hallman, Branch Chief of the Inmate Grievance Branch of the SCDC, in which she swore that she reviewed Plaintiff's grievances for the relevant time period, and indicated none had been exhausted save one regarding his complaints about his medical care, which grievance was administratively exhausted on October 2, 2013, well after the July 25, 2013, filing date of the instant action. (Dkt. 104).

Plaintiff filed his Reply to Hallman's affidavit on August 4, 2014, and generally complained that he had "made every effort to exhaust his administrative remedies and had satisfied the prerequisites for filing a 1983 lawsuit" and that "prison officials have adopted an unconstitutional policy in the filing of Grievances In an effort To Thwart The amount of Lawsuits being filed by Inmates."(sic)  (Dkt 108). Hence, it appears consideration of the summary judgment motion is appropriate.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. Id. at 324. Under this standard, the existence of a mere scintilla of evidence in support of the Plaintiff's position is insufficient to withstand the summary judgment motion. Anderson, 477 U.S. at 252. Likewise, conclusory allegations or denials,

without more, are insufficient to preclude the granting of the summary judgment motion. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir.1985).

## Failure to Exhaust Administrative Remedies

The Defendants' first argument is that summary judgment is appropriate because Plaintiff failed to exhaust his administrative remedies before bringing suit as to all his claims.[3] It appears that the Defendants are correct and this case should be dismissed without prejudice on that basis.

The PLRA requires that a prisoner exhaust his administrative remedies *before* filing a Section 1983 action.[4] 42 U.S.C. § 1997e(a). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Furthermore, it is well settled that Section 1997e's exhaustion requirement is mandatory. See Jones v. Bock, 549 U.S. 199, 211 (2007); see also Woodford v. Ngo, 548 U.S. 81, 90-91 (2006) (stating that the PLRA requires "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules"); Anderson v. XYZ Correctional Health Servs., Inc., 407 F.3d 674, 676-77 (4th Cir. 2005) (citing Porter, 534 U.S. at 524).

"Administrative law requires proper exhaustion of administrative remedies which

---

[3] Defendants also contend that they are entitled to summary judgment on the merits. Since the undersigned agrees that Plaintiff has not exhausted his administrative remedies prior to bringing suit, the court cannot review the claims on the merits.

[4] The PLRA provides in pertinent part: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

7

means using all steps that the agency holds out, and doing so properly." Woodford 126 S.Ct. at 2386 (internal quotations and citations omitted). Failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including § 1983. Id.

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is hauled into federal court." Woodford, 126 S.Ct. at 2385 (quoting McCarthy v. Madigan, 503 U.S. 140, 145, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." Id. Any consideration of administrative remedies pursued after the commencement of the litigation[5] would only serve to frustrate both purposes of the PLRA's exhaustion requirement and is, therefore not sanctioned.

## DISCUSSION

A review of the record and relevant case law reveals that Plaintiff did not administratively exhaust any of his claims prior to filing this action; thus the action should be dismissed without prejudice as having been brought in violation of the PLRA.

As mentioned, the Defendants were ordered to supplement their summary judgment motion with proper support to the extent they sought summary judgment on

---

[5] Plaintiff has filed with the court many affidavits, declarations, copies of requests to staff and Step One grievances since he commenced this action. It appears he believes the court will expand the scope of his allegations and will consider these in deciding his case; he is incorrect. FED .R. CIV. P. 15(d) provides that a court may permit a party to serve a supplemental pleading setting forth transactions, occurrences, or events which occurred after the filing of the complaint. Plaintiff did not seek permission to supplement his complaint and leave must be sought by motion, upon reasonable notice to the other parties, and the court may impose such terms as are just. Id.

the basis of Plaintiff's failure to exhaust administrative remedies required by the PLRA.

Defendants timely filed the affidavit of Ann Hallman, Branch Chief of the Inmate

Grievance Branch of the SCDC, who averred verbatim:

> I am Ann Hallman, the Branch Chief of the Inmate Grievances Branch of the South Carolina Department of Corrections. My duties include processing and responding to inmate grievances.
> I was contacted by attorney Trey Nicolette, who represents the SCDC in a law suit filed against the above captioned Defendants by Inmate Al-Haqq. To my knowledge, I supplied all of the grievances filed by Inmate Bilal Al-Haqq during the time period covered in this inmate's Complaint against SCDC.
> SCDC has an established inmate grievance procedure that allows inmates to grieve issues related to their confinement, including, but not limited to, the condition of their confinement and classification issues. The SCDC inmate grievance procedure is a three step process. First, an inmate must attempt to resolve the issue through an informal resolution. The attempt at an informal resolution is a prerequisite for filing a grievance.
> Next, the inmate can file a Step One grievance filling out an Inmate Grievance Form.  Since March 19, 2013,  inmate must file a Step One grievance within five days of receiving a response from a written request to staff member. Per SCDC policy, this form must be filled out by the actual inmate grievant and must be signed by that inmate. This Inmate Grievance Form must be turned in at the institutional level and be submitted to the Inmate Grievance Coordinator at the institution in question.  A Step One grievance must be submitted within fifteen days of the alleged incident or occurrence.
> After a response is given for the Step One grievance, if the inmate is unsatisfied, the inmate must appeal that response by checking the box on the response that states, "I do not accept the Warden's decision and wish to appeal" within five days of receipt of that response.  At that point, the inmate must also submit a Step Two Grievance form to the IGC.  The response to the Step Two grievance, or appeal, is considered SCDC's final agency decision on the issue. The inmate may then appeal SCDC's final agency decision to the Administrative Law Court.
> I have reviewed the grievances filed by Inmate Al-Haqq concerning the issues raised in his Complaint that he filed on July 26, 2013.  True and accurate copies of these grievances are attached hereto.[6]
> On April 18, 2013, Inmate Al-Haqq wrote a Grievance against Ms. Grubbs from the mail room, alleging that she was returning his mail.  This Grievance, ACI-0417-13, was returned unprocessed because it did not properly state

---

[6] No exhibits were filed with the affidavit, but the record already contained true copies of all referenced Grievances and Requests to Staff.

9

specific facts that pertained only to that incident and the inmate failed to attempt informal resolution.

On May 13, 2013, Inmate Al-Haqq filed a Step One grievance against Sgt. Rivers pertaining to phone usage. This grievance, ACI-0491-13, was returned unprocessed because the inmate had not attached the Request to Staff' Member showing informal resolution attempts. There is no evidence that the inmate attempted to correct this error and refile the grievance.

On May 17, 2013, Inmate Al-Haqq filed a Step One grievance relating to his medical care for his shoulder. This grievance, ACI-0508-13, was returned unprocessed because the inmate failed to show that he had attempted to informally resolve his issue before filing the grievance. The answer went on to explain the proper process for filing grievances after Requests to Staff Member.

On May 24, 2013, Inmate Al-Haqq filed a Step One grievance against Lt. Jenkins regarding phone use issues. This grievance, ACT-0521-13 was returned unprocessed for again not attempting informal resolution.

On June 4, 2013, Inmate Al-Haqq filed a Step One grievance against Lt. Jenkins regarding phone issues again. The grievance, ACT-0539-13 was returned unprocessed for improper procedure.

On June 12, 2013, Inmate Al-Haqq filed a Step One grievance alleging multiple things including that Corp. Bryant had assaulted him on two occasions. This grievance, ACI-9072-13, was returned unprocessed for to failure to submit it to the IGC. It appears the inmate made no attempt to refile this grievance properly.

On July 15, 2013, Inmate Al-Haqq filed a Step One grievance alleging that Corp. Bryant came to his cell and used chemical munitions on him after he refused to take the meal tray from Corp. Bryant. This grievance, ACI-0619-13, was forwarded to DOT for investigation, but the grievance itself was returned unprocessed for lack of an attempt at informal resolution. This grievance was never brought into proper form.

Grievances ACI-0567-13 and ACI-0581-13, relating to Corp. Bryant and phone use respectively were also returned unprocessed for failure to attempt an informal resolution. It appears that only one of his grievances was properly filed and processed, ACI-0526-l3. This Step One grievance, ACI-0526-13, complained of shoulder pain and lack of pain medication. The grievance was investigated and denied based on the fact that an X-ray had been scheduled for the inmate and pain medication had been prescribed. The inmate did file a Step Two grievance appealing the decision he received on the Step One grievance, but the final agency decision was not received by the inmate until October 2, 2013. This was months after the inmate had already filed his Complaint in July of 2013.

Because this inmate does not appear to have completed the proper grievance and appeal process, except for the one that he did not receive a final decision for until October 2013, he could not have properly exhausted his administrative remedies.

Dkt. 104

The Hallman affidavit is consistent with all the Step One grievances filed here by the Plaintiff[7] and the Defendants; it is also consistent with the one grievance which was exhausted after Plaintiff filed the instant action on July 25, 2013, grievance ACI-0526-13. Plaintiff argued that since it took prison officials almost four (4) months from June 5, 2013, until October 2, 2013, to respond to his Step 2 grievance in ACI-0526-13, the court should deem the SCDC grievance procedure "unavailable" within the meaning of the PLRA ("until such administrative remedies *as are available* are exhausted." 42 U.S.C. § 1997e(a)).

Plaintiff has not demonstrated that the grievance process at ACI is unavailable. Notwithstanding the ostensible delay, the Plaintiff, however, filed his Complaint on July 25, 2013, seven (7) weeks after he filed his Step 2 grievance. No final determination had been made and no substantial delay had occurred when he brought suit. Accordingly, regardless of the delay that may have ultimately ensued, the Plaintiff had not exhausted his administrative remedies at the time of the filing of this case, as required by the PLRA.

It is strictly enforced that exhaustion is a prerequisite to suit and must be completed prior to filing an action. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 677 (4th Cir.2005); Cabbagestalk v. Ozmint, 2007 WL 2822927 (D.S.C. 2007); see also Neal v. Goord, 267 F.3d 116, 123 (2nd Cir. 2001) (holding that "allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirements,

---

[7] Plaintiff disputed the affidavit by pointing to two (2) Step one grievances, 704-13 and 787-13, which Hallman did not acknowledge. Hallman's affidavit is limited to the time period set forth in the complaint, however, and the Step one grievances about which the Plaintiff complains were filed months after the filing date of the complaint.

11

undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court."); Jackson v. Dist. of Columbia, 254 F.3d 262, 268–69 (D.C.Cir. 2001) (rejecting the argument that § 1997e(a) "permits suit to be filed so long as administrative remedies are exhausted before trial"); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir.1999) (holding a "prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit."); Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999) (holding "[a]n inmate incarcerated in a state prison, thus, must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983."); Perez v. Wis. Dep't of Corr., 182 F.3d 532, 535 (7th Cir. 1999) (holding "a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment.").

There is no dispute that the Plaintiff had not exhausted his administrative remedies at the time he filed his Complaint and that then only seven (7) weeks had elapsed since he had filed his Step 2 Grievance in ACI-0526-13. It is true that under certain circumstances a grievance procedure can be rendered not "available" if prison officials prevent an inmate from using it. See Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (holding that inmate lacked available administrative remedy for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (allegations that prison officials failed to respond to his written requests for grievance forms were

12

sufficient to raise an inference that inmate had exhausted his available administrative remedies.)  Nevertheless, the Court is unaware of any decision that regarded a seven (7) week delay as long enough to find that administrative remedies were unavailable. See, e.g., Penny v. McBride, 2009 WL 1346126 (DSC 2009)  (unpublished) (two (2) month delay at time of filing suit did not render SCDC grievance process unavailable).  The circumstances here simply do not rise to the level needed for the court to declare that the SCDC grievance procedure is "unavailable" within the meaning of the PLRA.

Nor does Plaintiff's argument that, "Prison officials have adopted an unconstitutional Policy in the Filing of Grievances In and effort to thwart the amount of Lawsuits Being filed By Inmates" (sic), help him.  Such conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir.1985).  Al-Haqq has not successfully opposed the Defendants' well supported summary judgment motion.

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that Defendants' motion for summary judgment be granted, the Plaintiff's claims be dismissed without prejudice, and all other outstanding motions be denied as moot.

**IT IS SO RECOMMENDED**.

*[signature]*
WALLACE W. DIXON
UNITED STATES MAGISTRATE JUDGE

August 7, 2014
Charleston, South Carolina

**The parties' attention is directed towards the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).